**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **ERIN WILMOTH, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CAPITAL ONE SERVICES, LLC,**<br><br>**Defendant.** | **Civil Action No. 3:25-cv-825-RCY** |

## FIRST AMENDED COMPLAINT

Plaintiff Erin Wilmoth ("Wilmoth" or "Plaintiff") respectfully moves for judgment against Defendant Capital One Services, LLC ( "Capital One" or "Defendant"), as follows:

### Introduction

1. This is a claim for unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA") and the Virginia Overtime Wage Act, § 40.1-29.2 ("VOWA") for Capital One's failure to pay overtime premiums to individuals it employed as customer service representatives called Customer Advocates ("Customer Advocate"). On information and belief, Capital One employs upwards of 150 Customer Advocates under the same pay plan or scheme which resulted in massive wage theft and deprivation of overtime premiums to the cost of hundreds of thousands of dollars over the three years prior to the filing of this lawsuit.

2. Capital One engages in a scheme which results in so-called "white collar misclassification" whereby it gives its employees a job title that makes their position sound more important than it is (such as Advocate, Analyst, Consultant, Process Manager, Project Manager,

or Learning Associate), and which suggests that they pass one of the white collar "exemptions" to overtime laws.

3. Until around late April or early May 2025, Capital One had classified all of its Customer Advocates as salaried, "exempt" from the FLSA's overtime provisions. In or around April/May 2025, Capital One changed its classification of all of its Customer Advocates to hourly, "non-exempt".

4. Customer Advocates' duties did not change at all. In other words, Capital One had its Customer Advocates performing identical duties when it classified them as salaried-exempt, as it did when classified them as hourly-nonexempt.

5. Capital One owes overtime compensation to all of its Customer Advocates who worked overtime hours prior to its reclassification of their FLSA exemption status.

6. Plaintiff, who was employed by Capital One, brings this collective action under 29 U.S.C. § 216(b) on behalf of herself and others who are similarly situated current or former Customer Advocates seeking unpaid overtime, liquidated damages, and attorneys' fees and costs arising out of the Defendant's FLSA violations (the "putative FLSA Collective").

7. Plaintiff also brings claims under VOWA for failure to pay overtime on behalf of a putative class of similarly situated current or former Customer Advocates who are or have been employed in Virginia in any week between July 1, 2021 and the date Capital One reclassified them to hourly-nonexempt (the "Rule 23 Class").

**Jurisdiction and Venue**

8. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 to hear this Complaint and to adjudicate these claims because this action is brought under the FLSA.

9. In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. §

1367, over Plaintiff's supplemental state law claims, which are brought pursuant to the laws of the state of Virginia, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

10. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3(B)(4) since the acts and omissions giving rise to this lawsuit have taken place in the Eastern District of Virginia.

11. Defendant is subject to personal jurisdiction in the Commonwealth of Virginia.

**Parties**

12. Wilmoth is a resident of Virginia who was employed by Capital One from 2016 until August 26, 2025. Wilmoth was employed as a Customer Advocate at the time of her termination. Plaintiff was an "employee" as defined in the FLSA.

13. Capital One Services, LLC is a limited liability company with its principal office located at 1680 Capital One Drive, McLean, Virginia 22102. Capital One has a major work location in Goochland County, Virginia within this district and division where it employs over 52,000+ people. Capital One is an "employer" as defined by the FLSA.

**Factual Allegations**

14. Wilmoth was hired by Capital One in 2016. She was employed by Capital One until her termination on or about August 26, 2025.

15. From approximately January 2023 until her termination, Wilmoth worked for Capital One as a Customer Advocate.

16. Customer Advocates at Capital One handle what are internally called "escalated" complaints.

17. Wilmoth's job level, or rank, within Capital One was Associate.

18. Wilmoth's job was within the Credit Card line of business (referenced internally as "Card").

19. Wilmoth worked mainly remotely from her home in Richmond, Virginia.

20. Capital One required Wilmoth to pay for and maintain high speed internet services in order to work from home. Capital One provided Wilmoth with a laptop.

21. With Capital One's laptop and an internet connection, Wilmoth was able to perform work for Capital One any time, 24 hours per day, and any day, 7 days per week.

22. Wilmoth's primary duties were clerical and customer service in nature, including: performing casework or investigations, reading or listening to customer calls; talking on the phone with customers; answering questions; meeting, emailing, chatting and instant messaging ("IMs") with co-workers; entering notes into Capital One's systems; and logging, recording, or tracking information in Capital One's customer service systems.

23. Wilmoth had no authority to set policy, business objectives, rules or guidelines.

24. Wilmoth had no authority to create or determine Capital One's customer service systems.

25. Wilmoth did not supervise two or more full-time employees during the time she worked as a Customer Advocate for Capital One.

26. Capital One's work hours and expectations for Customer Advocates was that they were to be logged in from 8:00 a.m. until 4:30 p.m., Mondays through Fridays, for a minimum 8.5-hour workday, or a 42.5-hour workweek.

27. Wilmoth worked longer hours than the Capital One minimum required 8.5 hour days.

28. Other than during periods of sick/disability leave, vacation or holidays, Wilmoth

typically worked for Capital One for 45 hours or more each week, including time that she worked when she logged in before 8:00 a.m. (as early as 7:00 a.m.) before logging out well after 4:30 p.m. (as late as 6:00 p.m.).

29. Wilmoth sometimes logged in and performed work on weekends.

30. Before she was reclassified to hourly-nonexempt, Wilmoth was told that as a salaried employee, she was expected to get her work done even though it would take more than 40 hours per week.

31. Based on the amount of work given to, and expectations of, Customer Advocates at Capital One, Wilmoth was not able to get all her work done within 40 hours per week.

32. Wilmoth was told that she was not expected to get all her work done within 40 hours per week.

33. Capital One made it known to Wilmoth that as a salaried employee, she was expected to work more than 40 hours per week, without receiving any additional compensation for such hours.

34. Wilmoth did not stop working for an uninterrupted 30-minute meal break during her work day, instead she ate her meals while working, Mondays through Fridays.

35. From her Capital One-issued laptop, Wilmoth often performed work or checked her emails, slack, and other messages late into the evenings and before going to bed each night, as well as on weekends and on vacation.

36. Until Capital One reclassified its Customer Advocates in April/May 2025, Capital One misclassified Wilmoth as “exempt” from overtime, and unilaterally deemed her as ineligible for, and did not pay her any, overtime compensation.

37. At no time during Plaintiff’s employment did Wilmoth meet any overtime

exemption under the FLSA or VOWA.

**Common Allegations Regarding Customer Advocates**

38. At Capital One, the Customer Advocate job title is found within the Credit Card (or "Card") line of business, Customer Services & Strategy organization, Customer Channels group or division (called "Channel" or ""Channels" at Capital One).

39. Channels is essentially the customer service group within the "Card" line of business.

40. Capital One designates every employee within a hierarchy of one of fourteen job "levels" ranging from low to high as follows:

a. Coordinator,

b. Senior Coordinator,

c. Principal Coordinator,

d. Associate,

e. Senior Associate,

f. Principal Associate,

g. Manager,

h. Senior Manager,

i. Director,

j. Senior Director,

k. Vice President,

l. Managing Vice President,

m. Senior Vice President,

n. Executive Vice President.

41. Capital One designates its Customer Advocates at the Associate job level.

42. Every job within Capital One is assigned a "job code" in its human resources information system ("HRIS"). Capital One's HRIS is WorkDay.

43. Plaintiff is not aware of which precise Job Code(s) make up Capital One's Customer Advocates.

44. At Capital One, a Job Code is tied to a specific job title, and to a specific job level.

45. The specific Job Code(s) that Capital One assigns to its Customer Advocates is known to Capital One.

46. Plaintiff is aware that approximately 150 Customer Advocates were called into a mandatory Zoom meeting in or around April/May 2025 at which they all were informed that effective immediately, Capital One was reclassifying them from salaried-exempt to hourly-nonexempt.

47. This Zoom meeting was led by Jennifer Todd, Sr. Director, and a Capital One human resources employee (what Capital One internally refers to as an "HR Business Partner").

48. The Customer Advocates were informed at this Zoom meeting that going forward they would be required to keep track of the precise hours they worked, and that they would – from that point forward – be paid an overtime premium for hours worked beyond 40 hours per week.

49. There was no written paperwork provided to the reclassified Customer Advocates in connection with their overtime reclassification.

50. Capital One provided no written explanation to the reclassified Customer Advocates as to why their overtime classification was changing

51. Capital One did not inform the Customer Advocates that they are entitled to back

pay for all of the overtime hours they worked in the prior two to three years that Capital One had classified them as salaried-exempt.

52. Prior to the reclassification date in April/May 2025, Capital One did not track the precise hours that its Customer Advocates worked.

53. Prior to the reclassification date in April/May 2025, Capital One did not require its Customer Advocates to track the precise hours they worked each day.

54. Capital One's internal records can identify all Customer Advocates who were reclassified from exempt to nonexempt.

55. Capital One's internal records can identify the precise Job Codes that were reclassified from exempt to nonexempt, and in turn can identify all individuals who held such Job Codes within the statutory period.

56. This case is intended to cover all current and former employees who were employed prior to April/May 2025 in any of the Job Code(s) which Capital One later reclassified from exempt to nonexempt in or around April/May 2025.

57. Customer Advocates are rank-and-file employees with no special training or college degree required.

58. Customer Advocates' primary duties are clerical and customer service in nature, including: performing casework or investigations, reading or listening to customer calls; talking on the phone with customers; answering questions; meeting, emailing, chatting and instant messaging ("IMs") with co-workers; entering notes into Capital One's systems; and logging, recording, or tracking information in Capital One's customer service systems.

59. Capital Ones sets rules, guidelines, and processes that its Customer Advocates are required to follow.

60. Customer Advocates have no authority to set policy, business objectives, rules or guidelines.

61. Customer Advocates have no authority to create or determine Capital One's customer service systems.

62. Customer Advocates do not supervise two or more full-time employees.

63. Customer Advocates are not required, nor permitted, to exercise discretion or independent judgment involving matters of significance in carrying out their duties.

64. Capital One is a very process-driven company, reducing all lines of business to specific "processes" which lower-level salaried employees like Customer Advocate are required to follow.

65. Capital One requires its Customer Advocates to follow specific customer service processes.

66. Customer Advocates are evaluated, and subject to discipline, based on their strict compliance with Capital One's processes.

67. Plaintiff and other similarly situated Customer Advocates did not perform managerial or supervisory duties over other employees, such as: interviewing or selecting employees; setting employees' schedules or hours of work; directing employees' work; appraising employee performance; handling employee complaints and grievances; or disciplining employees.

68. Plaintiff and other similarly situated Customer Advocates did not perform work directly related to the management or general business operations of Capital One or its customers.

69. Customer Advocate duties require strict adherence to checklist-oriented functions.

70. Customer Advocates do not originate the customer service processes at Capital One.

71. Plaintiff and other similarly situated Customer Advocates did not perform work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

72. Plaintiff and other similarly situated Customer Advocates:

a. did not have the authority to formulate, affect, interpret, or implement management policies or operating practices;

b. did not have authority to waive or deviate from established policies and procedures;

c. did not have authority to commit Defendant in matters that have significant financial impact;

d. did not have authority to negotiate and bind Defendant on significant matters; and

e. were not involved in determining Capital One's long- or short-term business objectives.

73. Based on the nature of Customer Advocates' job duties, there is no overtime exemption that applies to preclude them from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

74. Capital One's reclassification of all Customer Advocates from salaried-exempt to hourly-nonexempt is an admission by Capital One that it had previously misclassified them.

75. The duties performed by Customer Advocates did not change, and in fact remain the same today, as they were prior to Capital One's reclassification of them in April/May 2025.

76. Capital One failed to keep accurate timekeeping records of the exact hours worked by Customer Advocates prior to April/May 2025.

77. Capital One has a work culture where all salaried employees are expected to regularly work in excess of eight hours per day, and well in excess of 40 hours per week.

78. Capital One issued Plaintiff and other Customer Advocate take-home laptop computers so that each could perform work for Capital One's benefit remotely and at all hours.

79. Capital One did not pay Customer Advocates any overtime premium for hours each worked over 40 per week prior to the reclassification in April/May 2025.

80. Capital One had actual or constructive knowledge that Customer Advocates were working overtime hours without being paid an overtime premium.

81. Capital One received the benefit of the overtime work performed by Customer Advocates prior to the reclassification in April/May 2025.

82. Capital One is in possession of records (such as log-in records, software timestamps, badge swipes, emails, and instant messaging systems) which should reflect that Customer Advocates were performing work for Capital One in excess of 40 hours per week for which they were not compensated.

83. Capital One employs an “FLSA toolkit” or an “FLSA worksheet” to analyze the appropriate FLSA overtime classification for various jobs.

84. Capital One conducted an FLSA overtime exemption analysis of the Customer Advocate position.

85. Capital One is in possession of the FLSA toolkits or worksheets applicable to Customer Advocates, and documentation relating to its reclassification of them from exempt to nonexempt.

86. Capital One was recklessly ignorant of VOWA's enactment and failed to comply with or follow the requirements of VOWA.

87. On information and belief, Capital One is in possession of audio/video recordings in connection with the Zoom meeting in April/May 2025 held to inform Customer Advocates that their overtime exemption status was changing.

88. Capital One is in possession of the scripts in connection with the messaging given to Customer Advocates in connection with their change in overtime status, including but not limited to the Zoom meeting held in April/May 2025 to inform them of the same.

89. Defendant willfully violated the FLSA and VOWA by misclassifying Plaintiff and other Customer Advocates as "exempt" in order to avoid paying overtime prior to the reclassification in April/May 2025.

90. At all relevant times, Defendant intended to deprive Customer Advocates of the overtime pay they are entitled to under the law or acted with reckless disregard for Plaintiff's rights under the FLSA and VOWA.

91. Capital One's lack of good faith, reckless disregard or willfulness in violating the FLSA and VOWA, is shown by its failure to make or offer backpay payments to the approximately 150 Customer Advocates that it reclassified in April/May 2025.

92. Capital One's lack of good faith, reckless disregard or willfulness is further demonstrated by Capital One's failure to provide any written documentation to its Customer Advocates explaining its reasons or rationale for its reclassification in April/May 2025.

93. Capital One's lack of good faith, reckless disregard or willfulness is further demonstrated by Capital One's failure to provide any written information or advice to its

Customer Advocates informing them of their rights under the FLSA or VOWA to claim overtime compensation for all overtime they worked prior to their reclassification in April/May 2025.

94. Capital One's intentional withholding of information and written documentation from its Customer Advocates demonstrates Capital One's attempt, and intent, to hide the existence of potential claims under the FLSA and VOWA from its Customer Advocates, such that the statute of limitations of any claims should be tolled from the date that discovery uncovers as the earliest date on which Capital One knew or should have known that it had misclassified its Customer Advocates as exempt from overtime.

**FLSA Collective Action Allegations**

95. Plaintiff files this collective action pursuant to 29 U.S.C. § 216(b) as a representative Plaintiff on behalf of similarly situated Customer Advocates.

96. Capital One employs, and has employed, multiple Customer Advocates.

97. Customer Advocates perform, and have performed, functions which entitle them to payment of overtime compensation which they have not received.

98. Customer Advocates have been denied overtime wages in violation of the FLSA.

99. Capital One compensated and continues to compensate Customer Advocates on a uniform compensation basis.

100. Prior to April/May 2025, Capital One failed to keep records of the actual amount of hours Plaintiff and similarly situated Customer Advocates have worked.

101. Capital One's compensation, administrative, recordkeeping, and supervisory operations are centrally managed as a single enterprise, and all Customer Advocates at Capital One are subject to common, uniform compensation, timekeeping and payroll practices.

102. Capital One has records of the identities of its Customer Advocates and can easily

identify the class of similarly situated putative plaintiffs.

103. The FLSA "collective" of similarly situated Customer Advocates is defined as follows:

> **Any individual who: (1) worked for Capital during any week in the statutory period [**minimum three years prior to April/May 2025, but possibly longer to include any equitable tolling period**] (2) and who was assigned to a Job Code that was reclassified from salaried-exempt to hourly-nonexempt in or around April/May 2025. ("FLSA Collective").**

104. This FLSA Collective includes all current and former employees who worked within the statutory period, whether or not their employment ended prior to Capital One's reclassification of Customer Advocates in April/May 2025.

105. This putative FLSA Collective is nation-wide in scope as Capital One uniformly designated all Customer Advocates as exempt from overtime laws prior to its reclassification of them in or around April/May 2025.

106. Defendant's willful disregard of the overtime laws described herein entitles Plaintiff and similarly situated employees to the application of the three (3) year limitations period, plus equitable tolling from the date Capital One knew or should have known that it misclassified Customer Advocates as exempt from overtime.

107. The job duties of Customer Advocates are not exempt from the overtime requirements of the FLSA.

108. At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

109. Plaintiff's consent to be a party plaintiff is attached as **Exhibit 1**.

## <u>Rule 23 Class Action Allegations</u>

110. Plaintiff brings this lawsuit as a class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of herself and the following Rule 23 Class:

> **Any individual who: (1) worked in Virginia for Capital One during any week in the statutory period [**minimum three years prior to April/May 2025, but possibly beginning on July 1, 2021 because of equitable tolling**] (2) and who was assigned to a Job Code that was reclassified from salaried-exempt to hourly-nonexempt in or around April/May 2025. ("Rule 23 Class").**

111. This Rule 23 Class includes all current and former employees who worked in Virginia within the statutory period, whether or not their employment ended prior to Capital One's reclassification of Customer Advocates in April/May 2025.

112. On July 1, 2021, Code of Virginia § 40.1-29.2 known as the Virginia Overtime Wage Act ("VOWA (2021)") was newly enacted and went into effect for employers in Virginia, and for the first time provided employees in Virginia with a state law right of action to cover overtime premiums for all work performed in excess of 40 hours per week. A copy of VOWA (2021) is attached hereto as **Exhibit 2**.

113. Also on July 1, 2021, the Virginia Wage Payment Act, Code of Virginia § 40.1-29 ("VWPA (2021)") was amended to include and incorporate overtime actions brought under VOWA (2021) which, *inter alia*, provided for a longer statute of limitations (3 years) and additional damages (*e.g.*, triple damages plus interest) than the FLSA. A copy of VWPA (2021) is attached hereto as **Exhibit 3**.

114. On July 1, 2022, VOWA was amended to follow the FLSA and applicable federal regulations ("VOWA (2022)"). A copy of VOWA (2022) is attached hereto as **Exhibit 4**.

115. Defendant's knowing and willful intent, and attempt, to hide the existence of overtime claims from its Customer Advocates, entitles plaintiffs to equitable tolling from the date Capital One knew or should have known that it misclassified Customer Advocates as exempt from overtime.

116. Because of equitable tolling, the Rule 23 Class includes claims brought under VOWA 2021, beginning as early as July 1, 2021 (which is the earliest possible date of VOWA claims).

117. Class action treatment of Plaintiff's VOWA claims is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

118. On information and belief, the Rule 23 Class includes hundreds of individuals, all of whom are readily ascertainable based on Defendants' business records, and are so numerous that joinder of all class members is impracticable. Plaintiffs estimate that as many as 250-400 individuals are putative class members for the VOWA claims between July 1, 2021 and the date Capital One reclassified its Customer Advocates in or around April/May 2025.

119. Plaintiff is a class member, and her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with the interests of other class members.

120. Plaintiff and her lawyers will fairly and adequately represent the class members and their interests.

121. Questions of law and fact are common to all class members, because, *inter alia*, this action concerns Defendant's common compensation policies, as described herein. The legality of these policies will be determined through the application of generally applicable legal principles to common facts.

122. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

**Count 1 – FLSA Overtime**

**(On Behalf of Plaintiff and the Putative FLSA Collective)**

123. The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

124. Defendant suffered and permitted Plaintiff and the other similarly situated individuals to routinely work more than forty (40) hours in a workweek without overtime compensation.

125. Defendant's actions, policies, and practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff and the other similarly situated individuals their required overtime compensation.

126. As the direct and proximate result of Defendant's unlawful conduct, Plaintiff and the other similarly situated individuals have suffered and will continue to suffer a loss of income and other damages. Plaintiff and the other similarly situated individuals are entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

127. By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the other similarly situated individuals, Defendant has failed to make, keep, and preserve records with respect to each of these employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

128. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendant knew or showed reckless disregard for the fact that their compensation practices were in violation of these laws.

129. Defendant's conduct in connection with its attempt to hide from Plaintiff and

other Customer Advocates their right to claim overtime prior to the date of their reclassification in or around April/May 2025 entitles Plaintiff and the Putative Collective to equitable tolling beginning on the date Defendant knew or should have known that it misclassified its Customer Advocates.

**Count 2 – Virginia Overtime Wage Act (Code of Va. § 40.1-29.2)**

**(On Behalf of Plaintiff and the Putative Rule 23 Class)**

130. Since July 1, 2021, Defendant has been an "employer" within the meaning of VOWA.

131. Since July 1, 2021, Plaintiff Wilmoth and those similarly situated have met the definition of "employee" within the meaning of VOVA.

132. Plaintiff Wilmoth and the putative Virginia Rule 23 Class were or have been employed by Defendant in Virginia at any time since July 1, 2021, and have been covered employees entitled to the protections of VOWA.

133. Defendant is not exempt from paying Plaintiff Wilmoth and the Virginia Rule 23 Class overtime premiums in accordance with VOWA.

134. Since July 1, 2021, Defendant has violated VOWA by failing to pay Plaintiff and those similarly situated an overtime premium for all hours worked beyond 40 hours per week.

135. Defendant knew that Plaintiff Wilmoth and the Rule 23 Class members were not paid overtime wages for all hours worked over 40 hours per week. Defendant knowingly or willfully failed to pay Plaintiff and the Rule 23 Class members all overtime wages due.

136. As the direct and proximate result of Defendant's unlawful conduct, Plaintiff and the other similarly situated individuals have suffered a loss of overtime wages. Plaintiff and Rule 23 Class members are entitled to their unpaid overtime wages, liquidated damages, triple damages (through June 30, 2022), prejudgment interest thereon, and attorneys' fees and costs

incurred in connection with this claim.

137. Plaintiff and the Rule 23 Class seek all damages available under VOWA (2021) for all weeks worked through June 30, 2022, and all damages available under VOWA (2022) for all weeks worked from July 1, 2022 until the date in or around April/May 2025 that Defendant reclassified Customer Advocates.

138. Defendant was recklessly ignorant of VOWA's enactment and failed to comply with or follow the requirements of VOWA.

139. As such, Defendant knowingly deprived Plaintiff and the Rule 23 Class of the overtime premium to which they were entitled under VOWA.

140. Defendant's conduct in connection with its attempt to hide from Plaintiff and other Customer Advocates their right to claim overtime prior to the date of their reclassification in or around April/May 2025 entitles Plaintiff and the Putative Collective to equitable tolling beginning on the date Defendant knew or should have known that it misclassified its Customer Advocates, but no later than July 1, 2021, which is the earliest date that VOWA claims began accruing.

**Relief Requested**

Wherefore, Plaintiff on behalf of herself and the putative FLSA collective and Rule 23 class, requests the following Relief against Defendant:

A. A finding of equitable tolling of the statute of limitations to the earliest possible date permitted by facts and law;

B. Designation of this action as a collective action on behalf of Plaintiff and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated, apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual consent forms;

C. A finding that Plaintiff and others similarly situated are non-exempt employees entitled to protection under the FLSA and VOWA;

D. A finding that Defendant willfully violated the overtime provisions of the FLSA and knowingly violated VOWA;

E. Judgment against Defendant in the amount of Plaintiff's and the putative FLSA Collective's and Rule 23 Class Members' unpaid back wages at the applicable overtime rates;

F. Certification of a class pursuant to Fed. R. Civ. P. 23 on the VOWA claims;

G. An award of all damages, liquidated damages, triple damages, pre-judgment interest and post-judgment interest;

H. An award of attorneys' fees and costs incurred in prosecuting this action;

I. Leave to add additional plaintiffs and/or claims by motion, the filing of written consent forms, or any other method approved by the Court; and

J. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

Respectfully submitted,
**Erin Wilmoth, individually and on behalf of all others similarly situated**
Plaintiff

By: *_/s/Craig Juraj Curwood_*

Craig Juraj Curwood (VSB No. 43975)
Harris D. Butler, III (VSB No. 26483)
Zev Antell (VSB No. 74634)
Samantha R. Galina (VSB No. 96981)
Attorneys for Plaintiff
Butler Curwood, PLC
140 Virginia Street, Ste. 302
Richmond, VA 23219
Telephone: (804) 648-4848
Fax: (804) 237-0413
Email: craig@butlercurwood.com
harris@butlercurwood.com
zev@butlercurwood.com
samantha@butlercurwood.com